UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20921-CIV-ALTONAGA/Goodman

**GOVERNMENT EMPLOYEES
INSURANCE CO.**; *et al.*,

     Plaintiffs,

v.

**DG ESTHETIC AND THERAPY
CENTER, INC.**; *et al.*,

     Defendants.

_____/

## **ORDER**

**THIS CAUSE** came before the Court on Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.'s (collectively "GEICO['s]") Motion for Summary Judgment Against Defendant Beacon Healthcare Center, Inc. [ECF No. 91], submitted contemporaneously with a Statement Pursuant to Local Rule 56.1 [ECF No. 92] ("Pls.' Facts") and Exhibits in Support [ECF No. 93]. Defendant, Beacon Healthcare Center, Inc., filed a Response and Memorandum of Law in Opposition [ECF No. 96] ("Response") and an Amended Statement of Material Facts in Opposition [ECF No. 97] ("Def.'s Facts"). Plaintiffs filed a Reply [ECF No. 99], to which Defendant filed a Sur-Reply [ECF No. 105]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

### **I.   BACKGROUND**

#### **A.   Introduction**

This case arises from allegedly unlawful personal injury protection ("PIP") insurance billing for healthcare services. GEICO brought this action against a series of healthcare clinics

and individuals, alleging they engaged in pervasive billing fraud and provided "medically unnecessary, illusory, unlawful, and otherwise unreimbursable health care services, including initial examinations, follow-up examinations, and physical therapy services" to Florida automobile accident victims eligible for coverage under GEICO's PIP insurance policies. (Amended Complaint [ECF No. 48] ¶ 1).

The relevant parties here are the "Beacon Defendants," who allegedly carried out the no-fault insurance fraud scheme at Beacon Healthcare Center, Inc. ("Beacon").[1] Beacon is the clinic where the healthcare services were performed. (*See id.* ¶ 3(i)). Defendant Rayxel Herrera is Beacon's owner and sole shareholder. (*See id.* ¶ 3(ii)). Defendant Michael W. Formisano, M.D. is a physician GEICO claims "falsely purported to serve" as Beacon's medical director. (*Id.* ¶ 3(iii)). Defendant Maira L. Guerra is a licensed massage therapist who performed allegedly unlawful physical therapy services at Beacon. (*See id.* ¶ 3(v)).

Between 2016 and 2018, GEICO paid Beacon $36,381.33 in PIP claims. (*See* Pls.' Facts ¶ 4). Beacon has also billed GEICO for $100,000.00 or more in PIP claims that remain unpaid. (*See id.* ¶ 5). Beacon and Herrera are presently attempting to collect on this billing in proceedings in county court. (*See id.*). Meanwhile, GEICO brought the present action "seek[ing] — among other things — a declaration that Beacon is not eligible to collect on any of its outstanding PIP claims because of its pervasive fraud and violations of Florida law." (*Id.* (alteration added)).

The Amended Complaint asserts the following claims against Beacon: Declaratory Judgment (Count I) (*see id.* ¶¶ 724–31); violation of the Florida Deceptive and Unfair Trade

---

[1] GEICO seeks summary judgment only as to Beacon. Defendant Rayxel Herrera filed a suggestion of bankruptcy, and the case is stayed against her. (*See* Order [ECF No. 88]). Defendant Michael W. Formisano is in default. (*See* Clerk's Entry of Default [ECF No. 80]). GEICO does not move for summary judgment as to Maira L. Guerra because questions of fact remain regarding her involvement in the scheme. (*See* Mot. 1 n.1). GEICO has resolved its claims with all other Defendants in the case. (*See id.*).

Practices Act ("FDUTPA") (Count XVI) (*see id.* ¶¶ 836–44); common law fraud (Count XVIII) (*see id.* ¶¶ 852–57); and unjust enrichment (Count XIX) (*see id.* ¶¶ 858–63). Some of the facts – disputed and undisputed – relevant to the present Motion are set forth below.

### B. Patient Examinations

GEICO insureds receive an initial examination when first seeking treatment at Beacon. (*See* Pls.' Facts ¶ 9). Formisano purportedly performed all the initial examinations of GEICO insureds at Beacon, which were later billed to GEICO under CPT code 99204.[2] (*See id.* ¶¶ 10–11). Although Beacon billed for Formisano's initial examinations using this code, "the putative examinations did not meet any of the requirements" for use of the code "and falsely inflated the level of PIP reimbursement to Beacon." (*Id.* ¶¶ 14–15). Beacon does not dispute the charges were upcoded. (*See id.*; *see* Def.'s Facts ¶ 15).

The same occurred with the insureds' follow-up examinations. Formisano personally performed the examinations, which Beacon billed to GEICO under CPT codes 99213 and 99214. (*See* Pls.' Facts ¶¶ 16–17). GEICO contends these examinations also did not meet any of the requirements for use of those codes. (*See id.* ¶ 22).

### C. "Physical Therapy" Services

After these preliminary examinations, insureds returned to Beacon for recurring healthcare services. (*See id.* ¶ 23). These "putative physical therapy services" included "hot/cold packs, mechanical traction, infrared therapy, contrast baths, ultrasound therapy, neuromuscular reeducation, hydro-bed therapy, therapeutic exercises, manual therapy, therapeutic activities, and electrical stimulation." (*Id.*).

---

[2] Beacon generally billed for its healthcare services using "current procedural technology," or "CPT" codes. (*See* Pls.' Facts ¶ 6). CPT codes are standard billing codes used by healthcare providers throughout the United States. (*See id.*). Each code is used to bill for a specific healthcare service and the use of each code represents the underlying service was performed consistent with applicable standards. (*See id.* ¶ 7).

The physical therapy services Beacon billed to GEICO were not performed or supervised by licensed physical therapists or physicians. (*See id.* ¶ 25). Rather, all physical therapy services were performed by unsupervised massage therapists, including Guerra. (*See id.*). Beacon falsely represented in the billing submitted to GEICO that Formisano was supervising the physical therapy services. (*See id.* ¶ 28). "In fact, Formisano neither personally performed, nor directly supervised, any of the purported physical therapy services at Beacon." (*Id.* ¶ 29).

GEICO also claims the putative physical therapy services were medically unnecessary, given (1) GEICO insureds received substantially-identical physical therapy treatment plans not tailored to each patient's individual circumstances, and (2) the unsupervised massage therapists who performed the therapy services were not qualified to develop or implement these treatment plans on their own. (*See id.* ¶ 30). Beacon disputes these facts, stating "the therapists did not implement a therapy plan on their own; the therapist[s] instead provided the therapy that was prescribed by the physician and adjusted the treatment as needed depending on the patient's condition." (Def's. Facts ¶¶ 30–31 (alteration added)).

### D. Beacon's Medical Director

Formisano's role as Beacon's medical director is one of the main points of contention in this case. Formisano purportedly served as Beacon's medical director from 2016 to 2018. (*See* Pls.' Facts ¶ 34). During this period, he simultaneously served as medical director at numerous other healthcare clinics. (*See id.* ¶ 37). Not surprisingly, he was "barely" at Beacon, reportedly spending "only one afternoon each month" performing his medical director duties at Beacon. (*Id.* ¶ 39). Formisano reportedly spent between six to ten hours every week at Beacon examining patients. (*See id.* ¶ 40).

The parties disagree whether Formisano adequately fulfilled his role as Beacon's medical director. GEICO claims during his deposition in December 2018, Formisano was unable to articulate the duties of a healthcare clinic medical director and accurately identify Guerra and other Beacon employees. (*See* Pls.' Facts ¶ 42 (citing Tr. of Dep. of Michael W. Formisano [ECF No. 93-3] ("Formisano Dep."))). Beacon offers several affidavits in response, including one executed by Formisano in February 2019. (*See* Def.'s Facts ¶ 42 (citing Aff. of Michael Formisano M.D. [ECF No. 96-3] ("Formisano Aff.") ¶¶ 23, 26)). In his affidavit, Formisano explains he had trouble recalling the information asked during his deposition due to a "lapse in memory" caused by a slip and fall accident he suffered. (Formisano Aff. ¶¶ 23, 26).

GEICO also contends Formisano failed to ensure the healthcare practitioners at Beacon were appropriately licensed to perform physical therapy services. (*See* Pls.' Facts ¶ 43). Beacon disagrees, pointing to Formisano's statement he was indeed aware the practitioners who worked at Beacon were licensed as massage therapists, and not as physical therapists. (*See* Def.'s Facts ¶ 43 (citing Formisano Aff. ¶¶ 25–26)). Formisano explains it was his "understanding then (as it is now) that massage therapists can lawfully perform the physical therapy that was being rendered at the facility since it is part of or incidental to their massage therapy practice." (Formisano Aff. ¶ 25).

GEICO also asserts "Formisano either did not conduct systematic reviews of Beacon's billing to ensure that the billing was not fraudulent or unlawful, or else did perform systematic reviews of Beacon's billing and failed to take any action regarding Beacon's fraudulent and unlawful billing." (Pls.' Facts ¶ 44). GEICO states Formisano (1) permitted Beacon to misrepresent the nature and extent of his purported examinations; (2) billed for physical therapy services unlawfully performed by massage therapists; (3) falsely represented the services had been

personally performed or supervised by him; and (4) allowed Beacon to bill for medically unnecessary treatments for insureds. (*See id.* ¶¶ 44, 46). Beacon categorically disputes these facts. (*See* Def.'s Facts ¶¶ 44, 46).

Formisano's level of involvement in supervising Beacon's billing practices is unclear on this record. Formisano was not familiar with CPT codes (*see* Pls.' Facts ¶ 45), and initially testified he "never looked at medical bills . . . " (*id.* ¶ 47 (quoting Formisano Dep. 86:6) (alteration added)). But Formisano later recanted this in his affidavit, stating "I am now certain that I did see the bills and that I checked them to determine if there is an objective indication of fraud . . . ." (Formisano Aff. ¶ 21 (alteration added)).

## II.  LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Courts must consider the entire record and not just the evidence singled out by the parties. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987).

If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (alteration added; citation omitted). "If reasonable minds might differ on the inferences arising from undisputed facts, then . . . [c]ourt[s] should deny summary judgment." *Id.* (alterations added; citations omitted). Additionally, courts cannot weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

### III. ANALYSIS

The Court first sets forth the applicable statutory and regulatory framework, and then turns to Plaintiffs' claims.

#### A. Florida's Motor Vehicle No-Fault Law

Florida's Motor Vehicle No-Fault Law ("No-Fault Law") requires automobile insurers to provide PIP coverage to victims of motor vehicle accidents "for reasonable, necessary, related and lawful treatment, without regard to fault." *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015) (citing Fla. Stat. §§ 627.730–627.7405). Covered medical benefits include reimbursement only for "services and care that are lawfully provided, supervised, ordered or prescribed . . . ." Fla. Stat. § 627.736(1)(a)(1) (alteration added). In the context of the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

*Id.* § 627.732(11).

> i.   *Billing and Reimbursement*

As relevant here, under the No-Fault Law insurers are not required to pay a claim (1) for any service or treatment that was not lawful at the time rendered; (2) to any person who knowingly submits a false or misleading statement relating to the claim; (3) with respect to a bill that does not substantially meet the statute's billing requirements (including requirements as to valid licensure of entities providing services); or (4) for any service or treatment that is upcoded. *See id.* § 627.736(5)(b). "Upcoding" is "an action that submits a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed." *Id.* § 627.732(14).

To satisfy the statute's billing requirements, service providers must properly complete and submit applicable Centers for Medicare and Medicaid Services ("CMS") billing forms; use proper CPT codes; and ensure statements of medical services do not include charges for services provided by an entity without valid licensure to perform such services. *See id.* § 627.736(5)(d).

Additionally, to be eligible for PIP reimbursement, healthcare services must be medically necessary. *See id.* § 627.736(1)(a). To be "medically necessary," the underlying healthcare service must be (a) provided in accordance with generally accepted standards of medical practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) not primarily for the convenience of the patient, physician, or other healthcare provider. *See id.* § 627.732(2).

The No-Fault Law specifically precludes reimbursement for massage therapy. Reimbursable medical benefits "do not include massage . . . regardless of the person, entity, or licensee providing massage . . . and a licensed massage therapist . . . may not be reimbursed for medical benefits under this section." *Id.* § 627.736(1)(a)(5) (alterations added).

>   *ii.   Massage and Physical Therapy*

Insurers are not required to pay a claim for medical services performed by a person or entity not validly licensed to perform those services. *See id.* § 627.736(5)(b)(1)(d) & 5(d); *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1163.

The practice of physical therapy generally requires licensure under the Physical Therapy Act, Florida Statute sections 486.011–486.182. The Physical Therapy Act contains one narrow exception to this requirement:

> No provision of [the statute] shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the statutes applicable to the profession of chiropractic physician, podiatric physician, doctor of medicine, *massage therapist*, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath.

Fla. Stat. § 486.161(1) (alteration and emphasis added). The parties dispute the purpose of this provision — a critical question to resolving the issues raised in the Motion.

As aptly described in a well-reasoned decision in a similar case involving GEICO and Beacon's current counsel, Beacon interprets this section of the statute "as a wholesale exemption from the physical therapy licensing requirements for certain enumerated professionals, including massage therapists." *Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 18-20101-CIV, 2019 WL 1383654, at *6 (S.D. Fla. Feb. 26, 2019) (internal record citation omitted). Beacon claims this exception allows unsupervised massage therapists to practice physical therapy without a license if they provide physical therapy services as incidental to the lawful practice of massage. (*See* Resp. ¶¶ 9–14). Not so.

The Court adopts the reasoning in *Quality Diagnostic Health Care, Inc.*:

> [Florida Statute section] 486.161(1) allows professionals licensed in enumerated areas to continue to perform medical services already covered under their professional license, notwithstanding the fact that the use of physical agents as part of those medical services also constitutes the "practice of physical therapy" under

>   the Physical Therapy Act. Contrary to Defendants' position, [section] 486.161(1) is not an unfettered right for these enumerated professionals to practice physical therapy outside of their professional license; it is an exemption to allow these professionals the full use of their professional license, despite the fact certain services they may perform under their professional license are also regulated as the "practice of physical therapy."

*Quality Diagnostic Health Care, Inc.*, 2019 WL 1383654, at *7 (alterations added).

Beacon's interpretation of the exception — that as lopong as physical therapy is incidental to the lawful practice of massage, unsupervised massage therapists do not need a license to engage in physical therapy — conflicts with the language and purpose of the statute. As the undersigned noted at the Hearing on Defendant's Motion to Dismiss, Beacon's interpretation of the exception "would turn the whole statute and statutory framework on its head . . . [and] render so many provisions meaningless." (Mot. Hr'g Tr. [ECF No. 40] 20:16–18 (alterations added)).

Certainly, Beacon is correct that it is not unlawful for unsupervised massage therapists to practice some limited forms of physical therapy, i.e, using "physical agents," as incidental to their practice of massage. (*See* Resp. 4–5). But to the extent these services are performed without supervision by another licensed medical professional, they constitute *massage*, rather than physical therapy. *See Quality Diagnostic Health Care, Inc.*, 2019 WL 1383654, at *7.

>   **B.    The Health Care Clinic Act: Medical Director Requirement**

In 2003, the Florida legislature enacted the Health Care Clinic Act (the "HCCA") to improve the regulation of health care clinics throughout the state. *See* Fla. Stat. § 400.990. The purpose of the HCCA "is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration." *Id.* § 400.990(2). As part of this comprehensive plan for oversight and consumer cost reduction, the HCCA requires health care clinics to appoint a medical director. *See id.* § 400.9935(1) (clinics owned by non-licensed individuals shall "appoint a medical director who

shall agree in writing to accept legal responsibility for [certain] activities on behalf of the clinic." (alteration added)). The general responsibilities of the medical director include the review of patient referral contracts and supervision over and compliance with statutory recordkeeping requirements. *See id.* Medical directors are also required to systematically review clinic billings to ensure they are lawful and ensure health care practitioners at the clinic are appropriately licensed. *See id.*

Importantly here, "[a] charge or reimbursement claim made by or on behalf of a clinic that is . . . *operating in violation of this part*, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable." *Id.* § 400.9935(3) (alterations and emphasis added).

C.     **Plaintiffs' Claims**

Having outlined the applicable statutory framework, the Court now turns to Plaintiffs' claims. GEICO argues summary judgment in its favor is proper for three principal reasons: Beacon indisputably (1) misrepresented the nature and extent of patient examinations it billed to GEICO; (2) billed for unlawful physical therapy services; and (3) lacked a legitimate medical director. (*See* Mot. 13–16).

As to the first reason, Beacon does not contest GEICO's assertion that Beacon's billing for initial and follow-up patient examinations was littered with several misrepresentations. (*See generally* Pls.' Facts ¶¶ 9–22). Still, these examinations only represent one portion of the entirety of PIP billing Beacon submitted to GEICO. And even if Beacon failed to comply with several billing requirements under the No-Fault Law, GEICO does not proffer any conclusive authority indicating billing misrepresentations alone support a finding, as a matter of law, that Beacon was operating unlawfully.

Moreover, as discussed above, at least some services provided by the massage therapists may have been lawful "as a part of, or incidental to" the practice of massage, even if they are not necessarily reimbursable under the No-Fault Law. *Quality Diagnostic Health Care, Inc.*, 2019 WL 1383654, at *7 (stating that, to the extent a massage therapist lawfully performed any services without supervision by a licensed medical professional, "such services could only have been massage therapy services pursuant to his massage therapy license, which are no longer allowed PIP reimbursement . . . ." (alteration added)).

Even if the three bases advanced by GEICO were conclusively established by undisputed facts, which the Court finds they are not, they would be insufficient to support a finding that Beacon was operating unlawfully, especially where the parties squarely disagree on whether the HCCA was violated. The parties' substantial dispute concerning Formisano's role as Beacon's medical director and Beacon's compliance with Florida law forecloses the entry of summary judgment in Plaintiffs' favor. Nevertheless, the Court examines whether summary judgment is appropriate as to any of Plaintiffs' individual claims below.

### i. Count I: Declaratory Judgment

GEICO seeks a declaratory judgment "that Beacon has no right to receive payment on any pending bills submitted to GEICO because of the fraud and violations of Florida law alleged in the Amended Complaint." (Mot. 17). In Florida, insurers may "pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1166 (quoting *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 12 (Fla. 2004)) (internal quotation marks omitted). "Courts find this remedy appropriate when an insurer seeks to be excused from making payments to a clinic that operates unlawfully." *Id.* (citations omitted).

As stated, a conclusive finding Beacon operated unlawfully is impossible with the current record, which is brimming with disputes of fact and conflicting evidence. True enough, the record *does* show Beacon failed to comply with the billing requirements in the No-Fault Law in several respects; for example, Beacon used improper CPT codes (*see* Pls.' Facts *¶¶* 14–15), upcoded charges (*see id.*), and billed for "physical therapy" services performed by unsupervised masseuses (*see id.* ¶ 25). But genuine disputes of fact remain on the issue whether Beacon billed for services it did not render (*see id.* ¶ 29) and whether Beacon billed for medically unnecessary services (*see id.* ¶ 30).

The record is also replete with disputes of fact whether Beacon violated the HCCA. The parties dispute whether Formisano was a legitimate medical director and fulfilled his role as required by the HCCA. (*See* Pls.' Facts ¶¶ 42–47; Def.'s Facts ¶¶ 42–47). GEICO submits as evidence Formisano's deposition testimony. (*See generally* Formisano Dep.). In opposition, Beacon points to Formisano's affidavit, executed several months after his deposition. (*See generally* Formisano Aff.). GEICO argues Formisano's affidavit "contravenes various aspects of [Formisano's] deposition testimony." (Reply 3 n.3 (alteration added)).

GEICO urges the Court to ignore Formisano's affidavit[3] and accept GEICO's facts, or alternatively, weigh his contradicting testimony. These things the Court will not do. To the extent

---

[3] In its Reply, GEICO argues the Court should not consider Formisano's post-default affidavit, because a defaulting defendant "loses his standing in court, is not entitled to appear in the case in any way, cannot adduce evidence, and cannot be heard at the final hearing." (Reply 4 (citing *Halpin v. David*, No. 4:06cv457, 2008 U.S. Dist. LEXIS 107689 (N.D. Fla. Dec. 8, 2008), *report and recommendation adopted*, 4:06cv457, 2009 U.S. Dist. LEXIS 17341 (N.D. Fla. Feb. 19, 2009))).

The Court is not persuaded. Even if, as GEICO contends, a party in default loses his standing in court, nothing in GEICO's case law suggests the loss of standing extends beyond a defendant's own liability in the case and renders him unable to give testimony for the benefit of another party. *See id.* Here, the affidavit is offered *not* by Formisano, but by Beacon, who has properly appeared in the action and is not in default. The Court thus considers the affidavit in resolving the Motion.

Formisano's testimony is inconsistent, "[i]t is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations." *Harris v. Shelby Cty. Bd. of Educ.* 99 F.3d 1078, 1084 (11th Cir. 1996) (alteration added; citations omitted).

The competing evidence and conflicting submissions show numerous factual issues remain regarding Formisano's role as medical director, which has significant bearing on whether Beacon violated the HCCA. Because the Court cannot weigh conflicting evidence to resolve disputed facts, summary judgment on Count I is denied. *See Skop*, 485 F.3d at 1140 (citations omitted).

    ii.  *Count XVI: the FDUTPA*

GEICO also seeks entry of summary judgment on its FDUTPA claim. To establish a claim under the FDUTPA, GEICO must show (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (citation omitted). "A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal quotation marks and citation omitted).

GEICO argues Beacon engaged in "deceptive acts" by "upcoding examination charges, billing for physical therapy services performed by unsupervised masseuses, and then falsely representing that Formisano directly supervised the services." (Reply 7). GEICO also contends Beacon engaged in "unfair practices" by billing in violation of the HCCA's medical director requirements, the No-Fault Law's PIP billing standards, and physical therapy licensing laws. (*See id.*; *see also* Mot. 19). As noted, however, issues of material fact remain as to many of these alleged misrepresentations and unfair practices.

Crucially, whether Beacon violated the HCCA by failing to have a legitimate medical

director is a material fact in dispute. (*See* Pls.' Facts ¶¶ 42–47; Def.'s Facts ¶¶ 42–47). It follows that whether Beacon was operating unlawfully, and thus submitting PIP bills in contravention of the HCCA, are also in dispute.

Additionally, even though Beacon failed to comply with several of the No-Fault Law's billing requirements,[4] genuine disputes of fact exist as to whether Beacon billed for services it did not render (*see* Pls.' Facts ¶ 29; Def's Facts ¶ 29), and whether Beacon billed for medically unnecessary services (*see* Pls.' Facts ¶ 30; Def.'s Facts ¶ 30).

GEICO nonetheless insists "federal courts in Florida have granted summary judgment to plaintiff-insurers on FDUTPA claims under analogous circumstances," relying on *State Farm Mutual Automobile Insurance Company v. First Care Solution, Inc.*, 232 F. Supp. 3d 1257 (S.D. Fla. 2017), and *Medical Service Center of Florida*, 103 F. Supp. 3d at 1343. (Mot. 21).[5] Neither case is persuasive. In both cases, the courts granted summary judgment on FDUTPA claims where there were no disputes of fact that defendants had violated the HCCA and unlawfully operated medical clinics. *See First Care Sol., Inc.*, 232 F. Supp. at 1268–69; *see also Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d at 1354–55. Here, in contrast, genuine disputes of fact remain whether Beacon violated the HCCA and was engaged in unfair and deceptive acts and practices.

Accordingly, summary judgment on GEICO's FDUTPA claim is inappropriate. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1308 (S.D. Fla. 2018) (declining to grant summary judgment on FDUTPA claim when issues of fact regarding deceptive acts and unfair practices remained).

---

[4] For example, it is undisputed Beacon used improper CPT codes (*see* Pls.' Facts ¶ 14–15), upcoded charges (*see id.*), and billed for "physical therapy" services performed by unlicensed and unsupervised masseuses (*id.* ¶ 25).

[5] In a pattern pervasive throughout Beacon's briefing, Beacon fails to address GEICO's argument on this issue. (*See generally* Resp.). In fact, Beacon barely sets forth a single cogent argument with a basis in law.

15

### iii. Count XVIII: Common Law Fraud

GEICO also contends it is entitled to summary judgment against Beacon for common law fraud. The elements of common law fraud under Florida law are: "(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 6:11-cv-1373, 2011 WL 6450769, at *4 (M.D. Fla. Dec. 21, 2011) (citing *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001) (other citations omitted)).

As GEICO itself acknowledges, generally "the issue of fraud is not properly the subject of summary judgment, because a resolution of the issues involved requires an exploration of the relevant facts and circumstances, and thus a court can seldom determine the presence of fraud absent a trial or evidentiary hearing." *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1159 (M.D. Fla. 2006) (citing *Robinson v. Kalmanson*, 882 So. 2d 1086, 1088 (Fla. 5th DCA 2004) (other citation omitted)). "This is because the questions of actual misrepresentation, intent, knowledge, and reliance all turn on factual determinations, which are often based on circumstantial evidence." *Id.* (citations omitted); *see also Inter-Tel, Inc. v. W. Coast Aircraft Eng'g, Inc.*, No. 8:04cv-02224, 2006 WL 3335050, at *8 (M.D. Fla. Nov. 16, 2006) (Because "questions of actual misrepresentation, intent, knowledge, and reliance are subjective, fraud can almost never be the successful subject of a motion for summary judgment." (citations omitted)).

Undeterred by the case law disfavoring summary judgment on fraud claims, GEICO argues Beacon "made numerous categories of misrepresentations in the PIP billing it submitted or caused to be submitted to GEICO, and GEICO paid the PIP charges in reliance on those

misrepresentations." (Mot. 21). While Beacon made several misrepresentations in its PIP billing — for example, through its improper use of CPT codes and statements about Formisano's supervision of therapy services — questions of fact remain on the other elements of fraud. One such material fact in dispute is Formisano's knowledge of the meaning of CPT codes. (*See* Pls.' Facts ¶ 21; Def.'s Facts ¶ 21). GEICO's reliance on the alleged misrepresentations is also in dispute. (*See* Resp. 10).

At a minimum, disputed issues of fact as to knowledge, intent, and reliance remain. Accordingly, summary judgment on GEICO's fraud claim is denied. *See Inter-Tel, Inc.*, 2006 WL 3335050, at *8 (declining to grant plaintiff's motion for summary judgment where material issues of fact remained on at least one element of fraud).

### iv. Count XIX: Unjust Enrichment

Finally, GEICO seeks summary judgment on its unjust enrichment claim. To state a claim of unjust enrichment under Florida law, a plaintiff must prove three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citation omitted).

"[C]ourts have found a cause of action for unjust enrichment appropriate when a service provider 'accepts and retains benefits that it is not *legally entitled* to receive in the first place.'" *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1165 (quoting *Silver Star Health and Rehab*, 739 F. 3d at 584) (alteration and emphasis added; other citations omitted). Here the parties dispute whether Beacon violated the HCCA and thus accepted and retained benefits Beacon was not legally entitled to receive. As the Court has discussed at length, given the disputed facts, it is not clear that

"[b]ased on [Beacons'] unlawful conduct, [GEICO] paid claims which it was statutorily entitled to deny." *Id.* (alterations added).

Once again, GEICO points to case law where courts "have granted summary judgment on unjust enrichment claims under analogous circumstances." (Mot. 19). Yet, as before, in each of these cases it was *undisputed* the clinics were operating in violation of the HCCA and the PIP payments were improper. *See First Care Sol., Inc.*, 232 F. Supp. 3d at 1261, 1268; *Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d at 1353–55; *B&A Diagnostic, Inc.*, 145 F. Supp. 3d. at 1164–65.[6]

Where, as here, substantial questions of fact remain as to whether the clinic operated unlawfully and retained a benefit by receiving PIP payments, summary judgment must be denied. *See Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d at 1308 (denying summary judgment on unjust enrichment claim where issues of fact remained regarding whether the HCCA was violated and the insurer conferred a benefit).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment Against Defendant Beacon Healthcare Center, Inc. **[ECF No. 91]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of April, 2019.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[6] *See State Farm Mut. Auto. Ins. Co. v. Filenger*, No. 1:17-cv-21737, 2018 WL 7185261, at *6 (S.D. Fla. Dec. 19, 2018). In *Filenger*, the court granted summary judgment on the unjust enrichment claim where "[t]he undisputed statement of material facts, [p]laintiffs' affidavit, and the attached business records" indicated the medical services were unlawfully rendered and the clinic violated the HCCA. *Id.* (alterations added). The court granted summary judgment because defendants "provided neither evidence nor argumentation to refute [p]laintiffs' allegations and record evidence . . . ." *Id.* (alterations added).